### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                      CRIMINAL ACTION NO. 1:08-cr-00043

JOHN CHARLES WELLMAN,

               Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant John Charles Wellman's Motion to Suppress Evidence [Docket 52]. By Order of Reference entered February 2, 2008, pretrial motions, including the pending motion, were designated for referral to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendations (PF&R) in accordance with 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort held an evidentiary hearing on Defendant's motion on August 13 and 14, 2008, and filed his PF & R on November 12, 2008. In that filing, the magistrate judge recommended that this Court deny Defendant's suppression motion in its entirety.

A district court judge must conduct a de novo review with respect to those portions of a magistrate judge's PF&R to which a timely objection is made. 28 U.S.C. § 636(b)(1), (b)(1)(A)-(C). The district court must review such objections unless a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Federal Magistrates Act gives district courts broad discretion to accept, reject, or modify a magistrate judge's proposed

findings. *United States v. Raddatz*, 447 U.S. 667, 680-81 (1980). Defendant has filed timely objections, and the Court undertakes a de novo review of the portions of the PF&R to which the Defendant objects.

## I. FACTS AND PROCEDURAL HISTORY[1]

On or about March 14, 2007, Sergeant C.M. Casto, who is a forensic computer examiner, digital technology officer for the West Virginia State Police, and Unit Coordinator for the West Virginia State Police's Internet Crimes Against Children Task Force, provided Corporal D.C. Eldridge of the West Virginia State Police with a list of computers. These computers were believed to be operating in Mercer County, West Virginia and offering files suspected to contain child pornography for download on the Internet. (Docket 86 at 2.) On the following day, Corporal Eldridge spoke with Sergeant Casto who informed him that the list was obtained from the Wyoming Division of Criminal Investigation's Internet Crimes Against Children Task Force ("Wyoming Task Force") and that the list provided the following information: the Internet protocol ("I.P.") addresses of computers offering child pornography for downloading, the times the computers were downloading such files, the hash values[2] of the pornography, the physical locations of the computers downloading the pornography, and the names and addresses of the officers who had obtained the information. (*Id.* at 3.)

---

[1] Following two days of evidentiary hearings, Judge VanDervort provided a complete recitation of facts in his PF&R (Docket 86 at 2-13), to which the Defendant did not object. (Docket 87 at 1.) Those facts are incorporated and adopted herein.

[2] A hash value is a "digital fingerprint" that is unique to a particular file. (Docket 52-5 at 11.) Because each hash value is unique, an algorithm, the Secure Hash Algorithm-1 (SHA-1), can be used to show to a 99.99 percent certainty that a file with the same hash value is an identical copy of the same file. (*Id.*)

Upon examining the list, Corporal Eldridge discovered that a computer using the I.P. address 69.139.103.84 had offered five files of child pornography for downloading. (*Id.*) With information provided by Comcast Cable Communications ("Comcast") pursuant to a Mercer County Circuit Court Order, Corporal Eldridge determined that the Defendant had been using the I.P. address in question, and that Defendant's e-mail address was boytoy2@comcast.net. (*Id.*) Next, Corporal Eldridge performed a driver's license search to confirm Defendant's home address and learned that Defendant had been convicted of a sexual offense in 1987,[3] and he had not registered as a sex offender. (*Id.* at 4.)

Corporal Eldridge provided this information, in addition to a summary of his law enforcement training and his experience with respect to child pornography, in an affidavit for a search warrant he submitted to Mercer County Circuit Court Judge David W. Knight on May 2, 2007. (*Id.* at 2.) In the affidavit, Corporal Eldridge requested permission to search Defendant's home (Docket 52-5 at 24) and seize "any and all computer and digital device hardware that has been used to [sic] may have been used in the sexual exploitation of children." (*Id.* at 3.) In support of his request for a search warrant, Corporal Eldridge stated that the property to be seized visually portrayed "a minor engaged in sexually explicit conduct." (*Id.* at 1.)

Upon reviewing the affidavit, Judge Knight found probable cause existed for the issuance of a search warrant based on the facts provided by Corporal Eldridge. (Docket 86 at 4.) Pursuant to the search warrant, on May 3, 2007, Corporal Eldridge and other officers searched Defendant's house. (*Id.* at 4-5.) During the search, Defendant volunteered a DVD containing child pornography,

---

[3] Defendant was convicted of first degree sexual assault for using physical force to compel a seven-year-old boy to submit to sexual intercourse. (Docket 52-5 at 16; Docket 86 at 4.)

and he admitted that child pornography was also stored on hard drives and in other formats. (*Id.* at 5.) The officers seized a number of firearms, ammunition, and computer equipment containing a large amount of child pornography during the search. (*Id.*)[4] After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 479 (1966), Defendant admitted to downloading child pornography, engaging in sexually explicit conversations with children online, participating in file-to-file sharing of child pornography, and owning firearms after being convicted of a sexual offense involving a minor. (*Id.*)

On February 21, 2008, Defendant was named in a four-count indictment, charging him with the following violations: (1) receipt of an obscene image of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 1466A(a); (2) receipt of obscene visual representations of sexual abuse of children while being required to register as a sex offender, in violation of 18 U.S.C. §2260A; (3) knowing possession of hundreds of digital images and video files of child pornography in violation of 18 U.S.C. §2252A(a)(5)(b); and (4) possession of seven fire arms after being convicted of a felony, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2).

Thereafter, Defendant filed a motion to suppress evidence, including the digital image of child pornography charged in Count One of the Indictment, all digital images or digital movies of child pornography retrieved from Defendant's computers, CD-ROMs, and/or DVD disks as charged in Count Three of the Indictment, and the seven firearms identified in Count Four of the Indictment. (Docket 52.) The government filed a response in opposition. (Docket 68.) Magistrate Judge VanDervort conducted an evidentiary hearing on the matter and, on November 12, 2008, entered a

---

[4] Also during the search, officers found a photographic dark room as well as professional lighting devices, backdrops, children's costumes and toys, child-sized leather restraints, and "other items related to sadomasochism and bondage." (Docket 88 at 5.)

PF&R, recommending that the Defendant's motion to suppress evidence be denied. (Docket 86.) The Defendant filed objections to the PF&R, (Docket 87), the government filed a response to the defendant's objections (Docket 88), and the Defendant filed a reply to the government's response (Docket 89).

Defendant's first objection to the PF&R asserts that Defendant's motion to suppress should have been granted because the Government failed to present sufficient evidence to support a finding of probable cause for this issuance of the search warrant. (Docket 87 at 2.) Second, Defendant argues that the *Leon* "good faith exception" does not remedy the alleged lack of probable cause for the search warrant. (*Id*. at 21.) Third, Defendant alleges that there was insufficient evidence to support the issuance of the administrative order to Comcast requiring the subscriber information relating to Defendant's I.P. address. (*Id.* at 23.) In addition, Defendant contends that the plain view doctrine does not support the seizure of the firearms from Defendant's home because the firearms were not included in the list of items to be seized. (*Id.* at 24.) Fifth, Defendant argues that Corporal Eldridge failed to obtain a knowing and voluntary waiver of Defendant's Fifth Amendment rights when he executed the search warrant. (*Id.* at 25.) Finally, Defendant asserts that to the extent the search of Defendant's home was illegal, any post-arrest incriminating statements made by Defendant should be excluded as derivative evidence. (*Id.* at 26.)

## IV. DISCUSSION

### A. *Determination of Probable Cause*[5]

The Court has reviewed the information on the record and Judge VanDervort's finding that there was probable cause to support the search warrant.

#### 1. *Objections raised at evidentiary hearing*[6]

Defendant asserts that Judge VanDervort erred in overruling several objections he made at the evidentiary hearing that occurred on August 13 and 14, 2008. (*Id.*) Defendant claims that because these objections should have been sustained, Judge VanDervort's determination that probable cause was supported by the "totality of the circumstances" is flawed. (*Id.*) Thus, before this Court addresses the issue of probable cause, it will first review the objections overruled by Judge VanDervort in Defendant's suppression hearing. However, when reviewing these objections, the Court is mindful that "[w]hen reviewing the probable cause supporting a warrant, a reviewing

---

[5] Before determining the existence of probable cause to support a search warrant, a district court normally determines whether the searching officer's conduct falls within the "good faith" exception set forth in *United States v. Leon*, 468 U.S. 876 (1934); however, to properly address Defendant's objections in this case, the Court will first address the existence of probable cause.

[6] In addition to objecting to rulings made by Judge VanDervort at the evidentiary hearing, Defendant also claims that information obtained pursuant to the April 3, 2007, order issued by Mercer County Circuit Judge Derek C. Swope, directing Comcast to disclose information relating to the IP address 69.139.103.84, should not be considered in the probable cause determination. (Docket 87 at 23.) Defendant alleges that Judge Swope's order was issued without authority. (*Id.*) Defendant admits that courts in the Fourth Circuit have held that "there is no suppression remedy available for defendants where an ISP discloses stored communications or transactional records without the requisite authority." (*Id.* at 24.) (citations omitted). However, Defendant still claims that "inclusion of such illegally obtained information should not be relied upon in Corporal Eldridge's May 2, 2007, application to justify probable cause in this case." (*Id*.) This argument is flawed because if evidence can be admitted at trial, it stands to reason that the very same evidence could be used for the determination of probable cause for the issuance of a search warrant. Accordingly, Defendant's objection is **OVERRULED**.

court must consider only the information presented to the [judge] who issued the warrant." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990).

First, Defendant alleges that Judge VanDervort violated the Sixth Amendment by permitting testimonial out-of-court statements during Defendant's evidentiary hearing. Defendant claimed that a "*Crawford* error was committed when Trooper Kozik stated that two of the investigators on the Wyoming Taskforce spreadsheet told him that they followed the same detailed technical procedures as him for conducting online peer-to-peer investigations for child pornography." (Docket 87 at 14.)

The Defendant is correct that *Crawford v. Washington*, 541 U.S. 36 (2004), held that the Confrontation Clause bars out-of-court statements by witnesses that are testimonial, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses. However, *Crawford* applies only to trials and not to suppression hearings. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987) (holding that "[t]he opinions of this Court show that the right to confrontation is a *trial right*, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination.") (citations omitted) (emphasis added); *see also*, *U.S. v. Waldron*, 2007 WL 2080520 at 5 (D.C. S. D. 2007) (citations omitted) (holding "*Crawford* applies only to trial and *not* to a pretrial suppression hearing.") Therefore, Defendant's objection to the admission of Trooper Kozik's testimony regarding his conversations with members of the Wyoming Task Force is **OVERRULED**.

Nevertheless, this Court will not rely on the testimony provided by Corporal Eldridge regarding his conversations with members of the Wyoming Task Force because Defendant alleges and the Government does not dispute that these conversations took place after the affidavit was submitted to Judge Knight. (Docket 87 at 15.) Therefore, such information was not relied upon by

Judge Knight in his determination of probable cause. Instead, Judge Knight relied upon information regarding peer-to-peer investigation based on Corporal Eldridge's conversation with Sergeant Casto, which was included in the affidavit, (Docket 52-5 at 13.), and this is the information that will be considered by this Court.

Second, Defendant alleges that Judge VanDervort should have sustained his foundation objections with regard to Trooper Kozik and Corporal Eldridge's statements about the qualifications and abilities of the investigators who participated in the peer-to-peer investigation of Defendant. (Docket 87 at 18.) Trooper Eldridge commented that "because other investigators such as [him] are the ones who make the database and put the information into it, [he] would rely on their knowledge in the field to compile or to put into the database the notable or known child pornography." (Docket 86 at 10.) In addition, Corporal Eldridge stated he "was confident that those other investigators who are trained in accordance with ICAC policy and guidelines, that these are experienced peer-to-peer investigators, otherwise they wouldn't be issued a license." (*Id*. at 12.)

Defendant objected to both statements, each time alleging that "there [had] been no foundation laid for [the witness] that he would know anything about how other people were trained, when they were trained, or how those officers specifically got these fives files that are at issue in this case." (*Id.* at n. 10.) Judge VanDervort overruled each objection, admitted Trooper Kozik's testimony regarding the training of peer-to-peer investigators and held that "Corporal Eldridge reasonably assumed that investigators who provide information through the task force database are trained and certified to find and identify child pornography." (*Id*. at 12.)

Defendant objects to Judge VanDervort's consideration of the testimony regarding the qualifications of the out-of-state investigators. Defendant asserts that Judge VanDervort should

8

have considered the fact that neither officer had met any of the six out-of-state investigators, (Docket 87 at 19), and the lack of documentation provided by the Wyoming Taskforce in response to Defendant's subpoena. The Defendant states in his objections that Rule 602 of the Federal Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Rules of evidence generally do not apply to suppression hearings. *See U.S. v. Matlock*, 415 U.S. 164, 172-73 (1974) ("[R]ules of evidence governing criminal jury trials are not generally thought to govern hearings before a judge to determine evidentiary questions."); *see also,* Fed. R. Evid. 1101(d)(1). When a judge considers testimony at a suppression hearing, the judge should give the evidence the weight his judgment dictates. *Matlock* 415 U.S. at 174-75. The Court **FINDS** that Judge VanDervort did not err in considering the testimony of Trooper Kozik and Corporal Eldridge. Accordingly, Defendant's objection to the testimony by Trooper Kozik and Corporal Eldridge regarding the qualifications of the investigators participating in the peer-to-peer investigation is **OVERRULED**.

Finally, Defendant claims that Judge VanDervort should not have considered an in-court demonstration regarding how the alteration of one pixel within a digital picture file can change the file's numerical hash value. (Docket 87 at 4.) Defendant states that "[t]he testimony was not relevant where the Government presented no proof that the Defendant possessed any computer software which could edit or alter the pixels of the five digital <u>movie</u> files which were the subject of the Wyoming Taskforce spreadsheet." (*Id.*)

However, Defendant does not explain his relevancy objection or whether a demonstration of the alteration of a picture file is different from the a demonstration of the alteration of a movie

9

file. Because Defendant's objection to the demonstration is conclusory, it does not merit de novo review by this Court, and it is **OVERRULED**. Having reviewed Plaintiff's objections to evidence considered by Judge VanDervort, the Court will now consider whether the information provided to Judge Knight supported a finding of probable cause.

*2. Probable cause analysis*

Though the Court will conduct a de novo review of the findings in the PF&R, the Court will afford due deference to Judge Knight's determination that probable cause supported the issuance of a search warrant. The Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A [judge's] determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates,* 462 U.S. 213, 236 (1983) (internal citations omitted). A reviewing court must apply a totality of the circumstances test to determine whether probable cause supported a search warrant. *Id.* at 231, 233. As the Supreme Court has held

> [t]he task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contra-band or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.

*Id.* at 238.

When determining that there is probable cause that a file contains child pornography, a judge issuing a search warrant need not personally view the file. *See New York v. P.J. Video, Inc.,* 475 U.S. 868, 874 n. 5 (1986) ("[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that a

10

reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause . . . .").

In his PF&R, Judge VanDervort found that "[c]onsidering the totality of the circumstances which Corporal Eldridge mentioned in his Affidavit and Complaint for Search Warrant, [there is] an ample basis for Judge Knight's finding of probable cause and his May 2, 2007, issuance of the Search Warrant." (Docket 86 at 16.) Judge Vandervort concluded that Corporal Eldridge, who was "trained and experienced in child pornography investigations, . . . reasonably assumed that the files specified on the list contained child pornography based upon his familiarity with peer-to-peer investigative techniques and involvement in child pornography task force work." (*Id*.) Judge VanDervort further considered Defendant's suggestive e-mail address, his prior conviction of a sexual crime against a minor, and his failure to register as a sex offender – which was all evidence presented to Judge Knight in Corporal Eldridge's affidavit – to determine probable cause existed for the issuance of the search warrant. (*Id*. at 16-17.)

Defendant asserts that because Judge Knight was not provided with copies of the identified files or detailed descriptions of them, he could not make an independent determination as to whether their content would satisfy the federal definition of child pornography. (Docket 87 at 5.)

Here, the files in question were described as "material visually portraying a minor engaged in sexually explicit conduct." (Docket 52-5 at 1.) The affidavit explained that this information was provided by the Wyoming Task force. (*Id.* at 13.) Also, the affidavit provided that though no supporting documentation was provided by the investigating officers, Corporal Eldridge believed the information to be accurate. The Eighth Circuit has held that an officer seeking a search warrant need not personally view files containing child pornography but may rely on prior observations of

11

other law enforcement officers. *See United States v. Cartier*, 543 F.3d 442, 446 (8th Cir. 2008). This Court agrees that Corporal Eldrige's reliance on the Wyoming Task Force's information was sufficient.

However, as Judge VanDervort found, the information obtained from the Wyoming Task Force was not the sole basis for the issuing of the search warrant. On the contrary, the search warrant issued for the May 3, 2007, search of Defendant's home was based on several facts, including Defendant's status as a non-registered sex offender whose email address was boytoy2@comcast.net. Accordingly, the Court **FINDS** that, under the totality of the circumstances of the warrant application, Judge Knight had a substantial basis for his probable cause finding that Defendant had child pornography on his computer and digital device hardware. Therefore, the Court **FINDS** that the search warrant issued on May 3, 2007 was valid.[7]

### C. "Good Faith Exception" to the Exclusionary Rule

Even if probable cause did not exist for the issuance of the search warrant, and the search warrant was invalid, the evidence obtained during the search of Defendant's home on May 3, 2007, should not be suppressed under the "good faith exception" to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 906 (1984). "Although '[t]he Fourth Amendment contains no

---

[7] Because the Court finds that the search warrant was valid, it **OVERRULES** as moot Defendant's objections that depend on a finding that the search warrant was invalid, including Defendant's objection that the plain view doctrine would not support the seizure of Defendant's firearms, (Docket 87 at 24) and Defendant's objection that, to the extent the search of Defendant's residence was illegal, all post-arrest incriminating statements should be excluded. (*Id.* at 26). In addition, the Court declines to review Defendant's objection that Corporal Eldridge failed to obtain a knowing and voluntary waiver of the Defendant's Fifth Amendment rights prior to his discussions with the Defendant that occurred during the execution of the search warrant, (*Id.* at 25), because not only does this objection have no bearing on the motion to suppress, but also this argument has not been raised in any other pleading prior to Defendant's objections to the PF&R.

provision expressly precluding the use of evidence obtained in violation of its commands,' *Leon*, 468 U.S. 897, 906 [], the Supreme Court adopted the exclusionary rule 'to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' *Unite States v. DeQuasie*, 373 F.3d 509, 519 (4th Cir. 2004) (citing *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

"Generally, the exclusionary rule provides that evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure, and it reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *Id*. (citing *Segura v. United States,* 468 U.S. 796, 804 (1984)(internal citations omitted) (internal quotations omitted). However, the Supreme Court provided a good-faith exception in *Leon*, holding that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

Under the *Leon* good faith exception, "evidence obtained pursuant to a warrant which is ultimately held invalid need not be excluded as long as the warrant was issued by a detached and neutral magistrate and the executing officers' reliance on the warrant was objectively reasonable." *U.S. v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994). There are some circumstances in which it is evident that an officer could have no reasonable grounds to believe a warrant was properly issued. *Leon*, 468 U.S. at 922-23. Specifically, the good faith exception does not apply in the following situations:

> first, when the warrant is based on an affidavit containing 'knowing or reckless falsity'; second, when the magistrate has simply acted as a 'rubber stamp' for the police; third, when the affidavit does not 'provide the magistrate with a substantial

>basis for determining the existence of probable cause'; and finally, when the warrant is so 'facially deficient' that an officer could not reasonably rely on it.

*U.S. v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (citing *Leon*, 486 U.S. at 923).

In this case, there is no indication that Judge Knight was not neutral and detached when he issued the search warrant in question, and Defendant does not assert otherwise. In addition, Corporal Eldridge had reasonable grounds to believe that a valid warrant was issued. The affidavit supplied to Judge Knight was twenty-four pages long, and was by no means "bear bones." (Docket 52-5.) The affidavit provided the address, description, and photo of the premises to be searched, (Docket 52-5 at 7-8), a list of items to be seized, (Docket 52-5 at 3-7), and sixteen pages of facts, providing the basis for probable cause that Defendant's home contained child pornography. (Docket 52-5 at 9-24.) Defendant does not allege that the affidavit contained false information nor that the warrant was facially deficient. Accordingly, this Court **FINDS** that the affidavit was not so lacking in indicia of probable cause that the deputies could not have possessed an objectively reasonable belief that the warrant was valid. Therefore, the Court **ADOPTS** the finding of Judge VanDervort that "there can be no issue in this case under *United States v. Leon*," (Docket 86 at 17), and it **DENIES** Defendant's Motion to Suppress Evidence.[8]

---

[8] In light of *Hudson v. Michigan*, 547 U.S. 586 (2006), even if the warrant in question was not based on probable cause or saved by the "good faith" exception, the exclusion of evidence might very well not be the appropriate remedy in this case. In *Hudson*, the Supreme Court decided, based in part on a cost-benefit analysis, that the exclusionary rule would not be applied to violations of the knock-and-announce rule. *Id.* at 594-95. The Supreme Court stated, "the exclusionary rule has never been applied except 'where its deterrence benefits outweigh its substantial social costs.'" *Id.* at 594 (quoting *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998)( citations and quotation marks omitted)). One might question the historical, practical accuracy of that statement, at least as the exclusionary rule has been applied by trial courts. Nonetheless, in the case at hand, the social costs of suppression would appear to outweigh the deterrence benefits. First, the social costs are great as suppression of the evidence at issue would likely result in a rapid conclusion to this prosecution with
(continued...)

*V. Conclusion*

In accordance with the above findings, the Court **ADOPTS** Magistrate Judge VanDervort's PF&R and **DENIES** Defendant's suppression motion [Docket 52].

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        January 7, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[8](...continued)
no determination as to actual guilt or innocence.

On the other hand, the deterrence benefits appear to be minimal. This case involves the use of cutting-edge technology where the officer seeking the search warrant provided a twenty-four page affidavit in support of the request. (Docket 52-5). Though it would have been preferable for the officer to include copies or detailed descriptions of the images in the affidavit, suppressing the evidence found pursuant to this search warrant is not necessary to encourage the implementation of these preferred methods. By virtue of this opinion, officers working with the Wyoming Task Force or similar entities, such as those in West Virginia, are on notice that it would be a better practice to include copies or descriptions of files listed by their hash numbers in future affidavits of this nature. However, law enforcement officers utilizing relatively new technology and innovative techniques in good faith should not be penalized with suppression of important evidence simply because they are at the beginning of a learning curve and have not yet been apprised of the preferences of courts on novel questions. Furthermore, as the Supreme Court stated, certain options, such as a civil suit, are available as alternatives to the exclusion of evidence. *Id.* at 597-98. Because the Court's ruling on the probable cause and good faith issues adequately address the motion, and because the parties here have not raised or briefed *Hudson*, no specific findings are made under *Hudson* in this opinion.