**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                CRIMINAL ACTION NO. 1:08-cr-00043

JOHN CHARLES WELLMAN,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court are factual objections to the Presentence Investigation Report (PSR) and legal arguments contained in the Sentencing Memoranda of both parties [Dockets 144 and 147-1] as well as supplemental memoranda filed by both parties.   Also before the Court is the Motion by the United States to Seal Sentencing Memorandum [Docket 147].[1]

*I.  BACKGROUND*

This Court conducted a jury trial in the above-styled case on January 27 and 28, 2009.  At trial the government presented evidence that the Defendant had been collecting, and later viewing over the Internet, child pornography for the past thirty years.  The Government also showed that a search of Defendant's home had revealed DVDs, disks, and hard drives containing hundreds of images and videos of child pornography including, among other forms of child molestation, child rape and child bestiality.   In addition, the Government offered evidence that Defendant had

---

[1]  For reasons appearing to the Court, the Government's Motion to Seal Sentencing Memorandum [Docket 147] is **GRANTED**.

previously been convicted of "Sexual Abuse in the First Degree," in violation of W. Va. Code § 61-8B-7 (a) (3).  On January 28, 2009, the jury returned a verdict of guilty on Counts One, Two, and Three of the Indictment.[2]  Specifically, the jury found Defendant guilty of knowingly receiving a visual depiction of a minor engaging in sexually explicit conduct that is obscene and had been shipped or transported in interstate commerce by any means, including by computer, in violation of 18 U.S.C. § 1466A(a) as charged in Count One; knowingly receiving an obscene visual representation of the sexual abuse of a child while being required by federal or other law to register as a sex offender in violation of 18 U.S.C. § 2260A as charged in Count Two; and possessing computer disks and computer graphic image files containing an image or video of child pornography which had been shipped or transported in interstate or foreign commerce by means that included a computer in violation of 18 U.S.C. § 2252A(a)(5)(B) as charged in Count Three.

Under the United States Sentencing Guidelines (U.S.S.G.), Defendant's imprisonment range is 210 to 262 months for Count One[3] and 210 to 240 months for Count Three.  *See* U.S. Sentencing Guidelines Manual §2G2.2 (2009).  The sentences for Count One and Three are to run concurrently.  *See* 18 U.S.C. § 3584.  In addition, as a result of his conviction on Count Two, Defendant is facing an additional statutory and Guideline sentence of ten years, which must run consecutive to the

---

[2]  Defendant was named in a four-count Indictment. (Docket 1.)  Prior to the trial, the Court entered an Order, (Docket 110), granting in part and denying in part Defendant's Motion to Sever Counts, (Docket 55).  Specifically, the Court held that Count Four, which charged Defendant with possession of seven firearms after being convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), would be tried separately from Counts One through Three.  Following the trial, on February 4, 2009, the Government filed a Notice of Dismissal, (Docket 137), and Count Four was dismissed.

[3]  The bottom of the guideline range for Count One is thirty months over the statutory mandatory minimum of 180 months.  The statutory maximum term of imprisonment is forty years for Count One.  The minimum statutory term for Count Three is ten years, and the maximum is twenty years.

sentence for Counts One and Three.  Therefore, if the Court were to impose a sentence under the Sentencing Guidelines, Defendant would face between 330 months and 363 months of imprisonment.

On February 2, 2009, the Court entered a Judgment Order [Docket 134] directing the Probation Office to submit a draft PSR to the Government and counsel for the Defendant no later than April 29, 2009; directing the Government attorney and counsel for Defendant to file any objections to the PSR no later than June 1, 2009; and directing both parties to file sentencing memoranda addressing the factors set forth in 18 U.S.C. § 3553(a).  The Probation Office timely submitted its PSR, and Defendant timely filed objections to the inclusion of information in the PSR that he claims is not relevant to sentencing.  In addition, in his Sentencing Memorandum filed on June 5, 2009 [Docket 144], Defendant argues that a variance from the Sentencing Guidelines is necessary in this case because the Sentencing Guidelines are unsupported by empirical evidence, and he raises Eighth Amendment concerns.   The Government timely filed its Sentencing Memorandum [Docket 147-1], responding to Defendant's sentencing memorandum and recommending a sentence within the guideline range.  With leave of the Court, Defendant filed a Reply memorandum [Dockets 149], and the Government filed a Surreply [Docket 151].  The Court heard oral argument on these issues on July 6, 2009.  This matter is now ripe for the Court's consideration.

## II.  ANALYSIS

### A.  Request for Variance from Sentencing Guideline Range

Defendant requests that the Court vary from the Sentencing Guidelines when imposing sentence.  Under U.S.S.G. § 2G2.2, Defendant's base offense level is 22.  The offense level is

enhanced 2 levels under U.S.S.G. § 2G2.2(b)(2) because the material involved prepubescent minors or minors under age twelve; it is increased 2 levels under U.S.S.G. § 2G2.2(b)(3)(F) because the material was distributed through peer-to-peer file sharing rather than any distribution method described in subsections A–E; 4 levels are added under U.S.S.G. § 2G2.2(b)(4) because the material portrayed sadistic or masochistic conduct or other depictions of violence; it is enhanced by 2 levels under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and 5 more levels are added under U.S.S.G. § 2G2.2(b)(7)(D) for more than 600 images.  Defendant's adjusted offense level is 37.  Based on a total offense level of 37 and a criminal history category of I, the Sentencing Guidelines yield a range of 210–262 months of imprisonment for Count One.[4]  Thus, the low end of the guideline range is 30 months greater than the statutory minimum of 180 months under 18 U.S.C. § 2252A(b)(1).

Defendant requests that the Court vary from the Sentencing Guidelines and "impose the [statutory] mandatory minimum term of imprisonment of 180 months for the sentence imposed for Count One and a concurrent mandatory minimum term of imprisonment of 120 months for Count Three."  (Docket 144 at 10.)  Defendant claims that though this sentence would be a variance from the guideline range, it "would serve as a 'sufficient, but not greater than necessary' sentence for purposes of achieving the statutory goals of 18 U.S.C. § 3553(a)."  (*Id.*)

In support of this argument, Defendant first challenges the Guideline for child pornography offenses, U.S.S.G. § 2G2.2.  Defendant asserts that "[t]here is a growing number of district courts which have held that the U.S.S.G. § 2G2.2 guideline for child pornography offenses should be afforded less deference as it was not based upon the type of empirical data and national experience

---

[4] The calculation for Count Three, which would run concurrently in any event, would be similar but for the 240 month statutory maximum for Count Three.

4

which the Sentencing Commission has relied upon in determining other Sentencing Guidelines." (*Id*. at 10–11.)  Defendant cites several district courts "that have relied upon the Supreme Court's decisions in *Kimbrough* and *Gall* as the authority for rejecting those Sentencing Guidelines which do not reflect the Sentencing Commission's exercise of its 'characteristic institutional role.'" (*Id*. at 11.)  Further, Defendant claims that a variance is warranted because "[t]he majority of the offense level enhancements for the U.S.S.G. § 2G2.2 guideline do not provide any insight into any aggravating factors pertaining to a defendant's offense conduct,"[5] (*id*. at 17), and "[t]here is no explanation offered by the Sentencing Commission as to why [an] arbitrary distinction exists between receipt/distribution and possession offenses when virtually all forms of child pornography found on computers are downloaded from the Internet," (*id.* at 17–18).  Defendant asserts that under *Kimbrough* and *Gall*, the Court may vary from the Sentencing Guidelines based on these policy considerations and not based on any particular circumstance of his.

(1)

To address this argument, the Court will examine the Supreme Court precedent regarding the discretion of sentencing courts to vary from the Sentencing Guidelines.  Prior to the enactment of the Sentencing Reform Act of 1984 (SRA), as amended, 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*, sentencing courts were permitted wide discretion in imposing criminal sentences within

---

[5] Defendant claims that his two-level enhancements under §§ 2G2.2(b)(2) and (b)(6) for possessing images of minors under the age of twelve and use of a computer are present in virtually every pornography prosecution, (Docket 144 at 19), and "[t]he Sentencing Commission did not undertake any type of study or otherwise explain the rationale behind the random selection for the numerical cutoffs for the U.S.S.G. § 2G2.2(b)(7) offense level enhancement, (*Id.* at 20).

statutory minimums and maximums.[6]  *United States v. Pauley*, 511 F.3d 468, 471 (4th Cir. 2007)

(citing *Mistretta v. United States*, 488 U.S. 361, 363 (1989)).  However, the SRA created the

Sentencing Commission "as an independent commission in the judicial branch of the United States"

authorized to establish and implement Sentencing Guidelines for the federal judicial system.  *Id.*

(citing 28 U.S.C. § 991(a)).

Before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005),

the Sentencing Guidelines were mandatory and binding on all federal sentencing and appellate

courts.  *Pauley*, 511 F.3d at 472.  However, in *Booker*, the Supreme Court "instructed district courts

to read the United States Sentencing Guidelines as 'effectively advisory.'"  *Kimbrough*, 552 U.S.

at 90.  Nevertheless, the Supreme Court "stressed in that case that a sentencing court still must take

the Guidelines into account at sentencing along with the factors set forth in § 3553(a)."  *Pauley*, 511

F.3d at 472 (citing *Booker*, 543 U.S. at 264).

In 2007, the Supreme Court issued two opinions outlining the mechanics of *Booker*.  *Id.* at

473 (citing *Kimbrough*, 552 U.S. 85, 128 S.Ct. 558 (2007) and *Gall v. United States*, 552 U.S. 38,

128 S.Ct. 586 (2007)).  *Gall* provided the following steps for a sentencing court: (1) calculate the

Guidelines range; (2) give both parties an opportunity to argue for an "appropriate" sentence; (3)

consider all factors listed in § 3553(a) to determine if they support a sentence requested by either

party; and (4) adequately explain its reasons for choosing the sentence, including any justification

for any variance.  *Gall*, 552 U.S. at 49-50.  In *Kimbrough*, the Supreme Court held that, because the

crack cocaine Guidelines were predominantly based on statutory minimum sentences and not

_____

[6] The "vast majority of federal criminal statutes have only a maximum term of years."  *Pauley*, 511
F.3d at 471.

empirical data or national experience, "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S. at 110. Thus, the Supreme Court recognized the "district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, ___U.S.___, 129 S.Ct. 840, 843 (2009). However, no authority binding on this Court has determined that a district court may vary from any other guideline based solely on policy disagreements with them.[7]

---

[7] Though no case decided by the Supreme Court has determined that sentencing courts may vary from Guidelines other than crack cocaine Guidelines based on categorical, policy-based disagreements with the Guidelines, the Fourth Circuit has implied that they may. *See United States v. Morace*, 594 F.3d 340 (4th Cir. 2010); *United States v. Engle*, 592 F.3d 495 (4th Cir. 2010). Courts of Appeal in other circuits have explicitly allowed policy-based disagreements in contexts other than crack cocaine. *See United States v. Lychock*, 578 F.3d 214 (3d Cir. Aug. 25, 2009); *United States v. Aguilar-Huerta*, 576 F.3d 365 at 367 (7th Cir. Aug. 3, 2009) ("A sentencing judge is free, as we said, to reject a guideline as inconsistent with his own penal theories; and rejecting a guideline as lacking a basis in data, experience, or expertise would thus be proper."); *United States v. Lente*, 323 F. App'x 698 at *712-713 (10th Cir. Apr. 29, 2009) ("Although *Kimbrough* arose in the crack-powder cocaine context, we have not questioned that its holding concerning policy disagreements extends beyond that context."); *United States v. Herrera-Zuniga*, 571 F.3d 568, 584 (6th Cir. 2009) ("Although *Kimbrough* and *Spears* both addressed this issue in the context of the crack-powder cocaine disparity, the Court's decisions in those cases suggest that this authority is not limited to that context."); *United States v. Stone*, 575 F.3d 83, at 93 (1st Cir. Aug. 5, 2009); *United States v. Tankersley,* 537 F.3d 1100, 1113 (9th Cir. 2008) (concluding that the sentencing court's "decision to depart—based on its desire to punish terrorist activities directed at private conduct in a manner similar to how it punished terrorist activities direct [sic] at Government conduct—did not render [the defendant's] sentence per se unreasonable"); *United States v. Cavera,* 550 F.3d 180, 196–97 (2d Cir. 2008) (upholding a variance based on a finding that the Guidelines failed to take into account certain policy considerations regarding the need to deter firearms offenses in New York).

(2)

Even if the holding in *Kimbrough* does extend to the child pornography Guidelines, and the

Court is permitted to vary from the Guidelines based on policy concerns, it is still within the Court's

discretion to impose a sentence within the Guideline range.  *See United States v. Aguilar-Huerta*,

576 F.3d 365 at 367 (7th Cir., Aug. 3, 2009).  In *Aguilar-Huerta*, Judge Posner made the following

observation with which the Court agrees:

> [W]e do not think a judge is *required* to consider . . . an argument that a guideline is
> unworthy of application in *any* case because it was promulgated without adequate
> deliberation.  He should not have to delve into the history of a guideline so that he
> can satisfy himself that the process that produced it was adequate to produce a good
> guideline.  For if he is required to do that, sentencing hearings will become
> unmanageable, as the focus shifts from the defendant's conduct to the "legislative"
> history of the Guidelines.[8]

---

[8]  Although the Court is not required to engage in an analysis of the history of the guideline, the
Court notes that though every increase in the § 2G2.2 Guideline is not a result of empirical data and
national experience reviewed by the Sentencing Commission, § 2G2.2 is not without empirical
support.  To emphasize this support, the Court will outline the changes in base offense levels for
U.S.S.G. § 2G2.2.

The Sentencing Commission submitted the original version of U.S.S.G. § 2G2.2 on April
13, 1987.  (Docket 144-2 at 4.)  In 1991, Congress increased the base offense level under U.S.S.G.
§ 2G2.2 for distribution/receipt from 13 to 15 (and possession from 10 to 13) and made other
changes based on data and testimony.  137 Cong.Rec. S10322-04 (1991).  For example, Senator
Helms, who proposed amendment 780, which increased the guideline range, stated the following:

> In 1986, the Senate Subcommittee on Investigations found that child pornography
> was directly connected to child molestation. The experts testified that users of child
> pornography are frequently pedophiles.  A Los Angeles police detective testified that
> he estimated that among the 700 child molesters he himself had helped arrest, more
> than half had child pornography in their possession at the time.  Furthermore, child
> molesters testified that they used child pornography to persuade children to engage
> in sex acts or to pose for pictures. And the Senate report concluded that:  Child
> pornography plays a central role in child molestations by pedophiles, serving to
> justify their conduct and assist them in seducing their victims.  We are talking about
> mere babies.  There have been dozens of studies by respected experts who come to

(continued...)

576 F.3d 365 at 367 (internal citations omitted) (affirming a 46-month sentence for a defendant convicted of being illegally in the United States after having been deported and a 420-month sentence of a defendant convicted of attempting to use a weapon of mass destruction).

Furthermore, "[e]ven though a guideline is affected by congressional adjustment, a sentencing court may rely on it." *United States v. Stone*, 575 F.3d. 83 at 93 (1st Cir. 2009). Indeed, it should. Lest we forget, criminal sentences serve many purposes, not the least of which is punishment. The sentence for a particular criminal act is not determined by feeding objective data

---

[8](...continued)
the same conclusion-child pornography is indeed a cause of child molestations.

*Id.* Senator Helms attached a detailed compilation of his research on child pornography at the conclusion of his remarks. *Id.*

In 1995, Congressman Schiff introduced the Sex Crimes Against Children Prevention Act ("SCACPA"), a bill increasing the base offense level for distribution/receipt from 15 to 17 (and possession from 13 to15), and, among other changes, increasing penalties for trafficking in child pornography when a computer is used. In support of the latter change, Congressman Schiff stated, "we have found that as the use of computers and the use of electronic communications increase for people in business and for personal use, it has, unfortunately, also increased for criminal use, including the sale of pornographic materials and for the sale of prostitution of children." 141 Cong.Rec. H4122-01 at H4123. Congress enacted SCACPA in 1996, which included a directive that the Sentencing Commission conduct a survey relating to child pornography and recidivism. *Id.* That study can be viewed at Report to the Congress: Executive Summary Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties, http://www.ussc.gov/r_congress/SCAC.htm.

The final increase to the base offense levels in U.S.S.G. § 2G2.2 came in 2004 when the Commission raised the base level for distribution from 17 to 22 (and possession from 15 to 18). This increase was made to comport with the statutory mandatory minimum. Congress had passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("the PROTECT Act"). The PROTECT Act was based, in part, on testimony from various experts and the information provided in the 1996 study. S. Rep. 108-2. In addition, studies conducted by the National Center for Missing and Exploited Children were referenced but not attached to the record. *Id.*

about the costs of the criminal behavior on society, recidivism rates, and so forth into a formula that produces a sentencing range with scientific rigor. Though data is important, guideline sentences embody normative judgments about how unacceptable an action is. Actions that deviate further from society's norms—that are viewed as more reprehensible—warrant greater punishment.

Possessing and distributing child pornography are not activities that society is prepared to tolerate. By increasing the penalties pertaining to child pornography offenses, Congress has expressed its belief that distributing and possessing child pornography are repugnant and unacceptable acts warranting severe punishments. These beliefs are highly subjective and not necessarily capable of being supported by empirical data. Thus, like the sentencing court in *Stone*, this Court agrees that "a direct reflection of a congressional expression of popular will [in these particular Guidelines] is an argument in favor, not against the imposition of a guideline sentence . . . . Congress is, after all, the elected representatives of the people of this country, and [it] has made policy choices about this type of crime, and those choices are reflected in the guideline range." *Id.* at 87.

Further, any child pornography offense must be considered seriously. Recently, the Fourth Circuit found a five-year probation sentence procedurally unreasonable where the defendant was convicted of possession of child pornography. *United States v. Morace*, 594 F.3d 340 (4th Cir. 2010). The Fourth Circuit noted the recent trend of downward departures in child pornography sentences. *Id.* at 346. Despite this trend, the Court stressed Congress's "increasing emphasis" on child pornography cases. *Id.* at 347. "[D]istrict courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that [child pornography crimes] are serious offenses deserving serious sanctions." *Id.* (quoting *United States v. Hecht*, 470 F.3d 177,

182 (4th Cir. 2006)).  Thus, even if it is permitted to do so, the Court chooses not to vary from the § 2G2.2 range simply because it was allegedly created as a result of Congressional directive rather than independent studies conducted by the Sentencing Commission or for other policy reasons.

Although the Court has determined not to vary from U.S.S.G. § 2G2.2 for any categorical, policy-based purposes, it recognizes that the Guidelines are not presumptively reasonable.  *See Nelson v. United States*, ___ U.S. ___, 129 S.Ct. 890, 891 (2009).  Therefore, the Court will examine the § 3553(a) factors to determine if a variance is appropriate in this particular case.  Defendant makes the following arguments with respect to his individual circumstances:

> (1) "The nature and circumstances of Mr. Wellman's involvement with child pornography would warrant the proposed variance sentence."  (Docket 144 at 22–23.);
>
> (2) "This Court should consider the fact that because of the nature of [Defendant's] only prior felony conviction, the statutory range of imprisonment significantly increased for Counts One and Three."  (*Id.* at 24–25.);
>
> (3) A fifteen-year sentence is reasonable based on Defendant's age, poor health, and contributions to society, including his term in service in the United States Army.  (*Id.* at 26–27.);
>
> (4) A fifteen-year sentence would promote respect for the law because fifteen years essentially equates to the remainder of Defendant's life.  (*Id.* at 27.);
>
> (5) A fifteen-year sentence would "mitigate against avoiding unwarranted sentencing disparities among defendants with similar records" in light of the growing number of courts varying from the § 2G2.2 guideline.  (*Id.* at 27.);
>
> (6) The Court can impose five years to life of supervised release, and therefore, his future activities would be monitored.  (*Id.* at 28.)

Conversely, the Government requests a sentence within the Guideline range.  In support of its position, the Government reiterates that evidence introduced at trial showed that Defendant obtained and downloaded hundreds of graphic images and videos over a period of thirty years and

11

evidence that "Defendant's interest in the sexual abuse of children dominated his entire life." (Docket 147-2 at 5.)  In addition, the Government asserts that given the gravity of the crime and Defendant's prior conviction, a sentence within the Guideline range would reflect the seriousness of the offense, promote respect for the law, provide a just punishment, and afford adequate deterrence.  The Government also avers that a sentence within the Guideline range is necessary to afford Defendant appropriate counseling and to protect children from future abuse by the Defendant as he continued to pose a threat even after his prior conviction and sentence.  Finally, the Government presents a detailed explanation of Congress' authority to establish Guidelines as well as accept or reject Guidelines promulgated by the Sentencing Commission, and it asserts that Congress and the Commission properly exercised their roles in developing U.S.S.G. § 2G2.2, which is supported by empirical data.

Defendant's Guideline range results from his recidivist status and enhancements that reflect several different aspects of the wrongfulness of his actions.  Defendant's conviction is not based on an uncharacteristic mistake of the Defendant.  Not only does he have a prior conviction, but he admitted that he had been heavily involved with child pornography for thirty years.  Nothing in Defendant's history as presented in the PSR indicates that Defendant is no longer a threat to society or that he is capable of being rehabilitated.  However, the Court will wait until sentencing and an opportunity to hear from counsel one more time, as well as Defendant himself, before finally ruling on the request for a variance on the basis of the facts and circumstances of this case.

*B.  Eighth Amendment Proportionality Review*

In addition to a sentence within the Guideline range for Counts One and Three, which is 210–262 months, Defendant is subject to a mandatory consecutive sentence of ten years for his violation of 18 U.S.C. § 2260A.  Defendant argues:

> Given the limited nature and circumstances of the conduct forming the sole basis for the Count One Conviction, the lengthy sentence which [Defendant] is already facing for Count One, and in further consideration of [Defendant's] age and health problems, this Court should find that the application of a consecutive ten year term of imprisonment would constitute cruel and unusual punishment in violation of [Defendant's] Eighth Amendment rights.

(Docket 144 at 3–4.)

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Supreme Court "has on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime."  *Rummel v. Estelle*, 445 U.S. 263, 271 (1980);  *see also Solem v. Helm*, 463 U.S. 277, 284 (1983) ("The final clause [of the Eighth Amendment] prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed.").

The relatively recent series of Supreme Court cases that address proportionality review started with *Rummel* in 1983.  In *Rummel*, the Supreme Court held that a life sentence with possibility of parole did not violate the Eighth Amendment when applied to a three-time offender.[9]  The *Rummel* Court observed that "[o]utside the context of capital punishment, successful challenges

---

[9]  Before being convicted of "obtaining $120.75 by false pretenses," the defendant in *Rummel* had been convicted of "fraudulent use of a credit card to obtain $80 worth of goods or services," and of "passing a forged check in the amount of $28.36."  445 U.S. at 265–66.

to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272.  In a footnote, the Court suggested that an example of such an exceedingly rare circumstance would be "if a legislature made overtime parking a felony punishable by life imprisonment." *Id.*, at 274, n.11.

Three years later, the Supreme Court identified three "objective" factors for courts to consider in determining whether a sentence violates the proportionality principle: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 290–92 (1983).  By applying the three-part proportionality test, the Supreme Court upheld the Eighth Circuit's decision that a sentence of life imprisonment without possibility of parole violated the Eighth amendment when applied to a nonviolent recidivist felon who was found guilty of the crime of uttering a "no account" check for $100.00.  *Id.* at 281–82.

Nearly a decade after the Supreme Court decided *Solem*, the applicability of the proportionality test was called into question by three seemingly conflicting opinions in *Harmelin v. Michigan*, 501 U.S. 957 (1991) (plurality).[10]  Joined by Chief Justice Rehnquist, Justice Scalia wrote, "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.* at 965.  He then determined that proportionality review is only appropriate in capital punishment cases.  *Id.* at 994.

---

[10] In *Harmelin*, the defendant had received a mandatory sentence of life imprisonment without the possibility of parole after being convicted of possessing more than 650 grams of cocaine.  501 U.S at 961.  A plurality of the Court rejected the defendant's claim that his sentence was disproportionate to his crime, which was his first felony conviction. *Id.* at 994.

However, Justice Kennedy, whose concurrence was joined by Justices O'Connor and Souter, wrote that though he concurred in the judgment and part of the Court's opinion, "*stare decisis* counsels [the Supreme Court's] adherence to the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." 501 U.S. at 997 (Kennedy, J., concurring in part and concurring in judgment).   Furthermore, he stated, "The Eighth Amendment proportionality principle also applies to noncapital sentences." *Id.*   Justice Kennedy explained that the precise contours of the proportionality principle provided in the Court's previous decisions were unclear, but the following common principles emerge: (i) the primacy of the legislature in determining appropriate punishment; (ii) the variety of legitimate penological schemes; (iii) the inevitably divergent theories of sentencing in our federal system; and (iv) the use of objective factors to inform proportionality review. *Id.* at 998–1001 (citations omitted.) Justice Kennedy emphasized, "Although 'no penalty is *per se* constitutional,' the relative lack of objective standards concerning terms of imprisonment has meant that '[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare.'" *Id.* at 1001 (citing *Solem*, 463 U.S. at 289–90) (internal quotations and citations omitted). Ultimately, Justice Kennedy found, "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* (citing *Solem*, 463 U.S. at 288.)

Thus, the law regarding proportionality review under the Eighth Amendment after *Harmelin* is confusing at best. *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (stating that the law regarding proportionality review after *Harmelin* is not "a model of clarity").   Moreover, the most recent Supreme Court cases to discuss proportionality review have done little to clarify the state of the law.

15

In 2003, in *Ewing v. California*, only three justices in the plurality approved of applying a proportionality principle in non-capital cases. *See* 538 U.S. 11 (2003) (Justice O'Connor delivering opinion of the court, joined by Justices Rehnquist and Kennedy, with Justices Scalia and Thomas concurring).  The plurality purported to rely on Justice Kennedy's concurrence in *Harmelin* to "guide [it's] application of the Eighth Amendment."  *Id.* at 23–24.  However, rather than conduct the three-step test outlined in Justice Kennedy's *Harmelin* concurrence and in *Solem*, the plurality analyzed only the gravity of the defendant's trigger offense of shoplifting and his history of recidivism to determine that a sentence of twenty-five years to life imprisonment for a recidivist offender of California's three-strikes rule did not violate the Eighth Amendment.  *Id.* at 28–30.  Though concurring in the judgment, Justices Scalia and Thomas believed that courts could not intelligently apply the proportionality principle.  *See id.* at 31–32 (Scalia, J., concurring).  Justice Scalia stated,

> In my opinion in *Harmelin* . . . I concluded that the Eighth Amendment's prohibition of cruel and unusual punishment was aimed at excluding only certain modes of punishment . . . .  Out of respect for the principle of stare decisis, I might nonetheless accept  . . .  that the Eighth Amendment contains a narrow proportionality principle—if I felt I could intelligently apply it.  This case demonstrates why I cannot.

*Id.* (Scalia, J., concurring, Thomas, J., concurring, agreeing with concurrence of Scalia).

In a companion case to *Ewing*, the Supreme Court issued a five-to-four decision, holding that "[i]n applying [the gross disproportionality] principle for § 2254(d)(1) purposes, it was not an unreasonable application of . . .  clearly established law for the California Court of Appeal to affirm [the defendant's] sentence of two consecutive terms of 25 years to life in prison."  *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).  Although its review under § 2254(d)(1) prevented the Court from reaching the merits of the petitioner's Eighth Amendment claim, the Court provided the following

dicta: "Through this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id.* at 72.

Thus, despite seemingly conflicting discussions in earlier cases that have not been overruled, it seems that after *Lockyer*, Supreme Court precedent dictates that the Eighth Amendment provides for proportionality review for terms of years. However, the vague series of Supreme Court opinions addressing proportionality review has not clearly decided whether review is available only for capital cases and life sentences without parole or whether it extends to sentences of years that are less than life without possibility of parole.

Conversely, the Fourth Circuit has consistently and repeatedly held that Eighth Amendment proportionality review "is not available for any sentence less than life imprisonment without possibility of parole." *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009); *see also Beverati v. Smith*, 120 F.3d 500, 504–05 (4th Cir. 1997); *United States v. Kratsas*, 45 F.3d 63, 67 (4th Cir. 1995); *United States v. D'Anjou*, 16 F.3d 604, 612–13 (4th Cir. 1994); *United States v. Etheridge*, 932 F.2d 318, 323 (4th Cir. 1991); *United States v. Rhodes*, 779 F.2d 1019 (4th Cir. 1985). The Fourth Circuit first made this determination in *United States v. Rhodes* by distinguishing *Solem* from *Rummel* and *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam).[11] *See Rhodes*, 779 F.2d at 1027–29. The Fourth Circuit recognized that *Solem* did not overrule *Rummel* or *Hutto*, both of which involved sentences with a possibility of parole; however, in *Solem*, the Supreme Court held that the defendant's sentence of life imprisonment without possibility of parole was disproportionate. *Id.*

---

[11] In *Hutto*, the Supreme Court reversed the Fourth Circuit's decision to affirm the district court's finding that a forty-year term of imprisonment was disproportionate to the crime committed—possession of marijuana with intent to distribute. *Hutto*, 454 U.S. at 706.

at 1028.   Therefore, the Fourth Circuit determined that "*Solem* requires an extensive[12] proportionality analysis only in those cases involving life sentences without parole."  *Id.*

Defendant contends that the Court "is not bound by that blanket prohibition [announced in *Rhodes*] . . . as it was at least inconsistent with existing [United States] Supreme Court precedent when first put forth and remains clearly in conflict with it now as it exists."  (Docket 144 at 4.) Specifically, Defendant argues that "[t]he holding in *Rhodes* creates a class of sentences that are *per se* constitutional, in contradiction to *Solem*."  (*Id.* at 5.)  In addition, Defendant asserts that "[e]ven if *Rhodes* was based on a tenable reading of the Supreme Court's proportionality cases when it was decided in 1985, that is no longer the case in 2009."  (*Id.*)  In support of this contention, Defendant claims that the Supreme Court conducted a proportionality review in *Ewing* and *Lockyer*, both of which involved sentences of less than life imprisonment.   Finally, Defendant argues, as an alternative ground, that even if proportionality review is only available for sentences of life imprisonment without parole, that his sentence is a *de facto* life sentence.

The Court first notes that Defendant's assertion that in light of *Ewing* and *Lockyer*, *Rhodes* and its progeny are "clearly in conflict" with Supreme Court precedent is not entirely correct.  It is true that the Supreme Court conducted a proportionality test—albeit a somewhat modified review from the test outlined in *Solem*—in *Ewing*, a case in which the defendant was sentenced to a term

---

[12]  In *Malloy*, the most recent case to address this issue, the court clearly stated that "proportionality review" is not available for sentences less than life imprisonment without possibility of parole.  568 F.3d at 180.   However, in *Rhodes*, the Fourth Circuit actually held, "*Extensive* proportionality analysis is required only in those cases involving life sentences without parole."  779 F.2d 1019 (emphasis added).  The adjective "extensive" appears to have been first omitted without discussion in *United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir. 1988) (abrogated on other grounds). However, for reasons stated below, the Court does not address the possible significance of this distinction at this time.

less than life without parole.  However, *Ewing* was a plurality opinion, and therefore, is not binding precedent.  *See Altria Group Inc. v. Good*, ___ U.S.___, 129 S.Ct. 538, 554 (2008) ("Because the plurality opinion . . . did not represent the views of a majority of the Court, we are not bound by its reasoning.") (internal quotations and citations omitted).  Furthermore, in *Lockyer* the Court noted that proportionality review is applicable to sentences for terms of years; however, the Court found that relief was precluded under § 2254(d) and did not address the merits of the petitioner's Eighth Amendment claim.  Thus, even after *Ewing* and *Lockyer*, this area of the law is not as clear as Defendant purports it to be.

However, the major premise of Defendant's argument—that by holding that proportionality review is not available for any sentence less that life imprisonment with the possibility of parole, *Rhodes* creates a class of sentences that are *per se* constitutional, in contradiction to *Solem*—presents a difficult issue.[13]  Courts in other circuits disagree with the Fourth Circuit's blanket decision not to recognize Eighth Amendment proportionality review for sentences less than life without possibility of parole.  *See, e.g., United States v. Kidder*, 869 F.2d 1328 n.5 (9th Cir. 1989) ("The Fourth Circuit's [determination that *Solem* does not require proportionality review of any sentence less than life imprisonment without parole] seems plainly incorrect in light of the Supreme Court's observation in *Solem* that 'no penalty is per se constitutional' and that 'a single day in prison may

---

[13]  The Government contends that Defendant's argument is misplaced because "the *Solem* case has been overruled by subsequent Supreme Court decisions."  (Docket 147-2 at 27.)  The Government cites to the plurality's opinion in *Harmelin* for this proposition.  However, as noted previously, plurality opinions are not binding precedent.  In addition, in *Lockyer*, the Supreme Court included *Solem* as a part of its discussion of "clearly established law."  528 U.S. at 64.  Though the *Lockyer* Court admitted that the precedent in this area was largely unclear, it did not indicate that *Solem* was overruled by *Harmelin*, but instead applied to *Solem* to the facts of the case in *Lockyer*.  *Id.* Therefore, it appears that *Solem* is still good law.

19

be unconstitutional in some circumstances.'") (citations omitted).   One court based this determination on the premise that the absence of proportionality review based solely on the possibility of parole seems to contradict the holding in *Robinson v. California*, 370 U.S. 660, 667 (1962), where "the United States Supreme Court . . . declared a ninety–day sentence for the crime of being addicted to narcotics unconstitutionally severe under the Eighth Amendment."   *United States v. Cal. Publishers Liqudating. Corp.*, 778 F. Supp. 1377, 1387 n.10 (N. D. Tex. 1991) (citing *Robinson*, 370 U.S. at 667).

Moreover, while recent Fourth Circuit cases have held that proportionality review is simply unavailable for sentences less than life without possibility of parole, *see Malloy*, 568 F.3d at 180, when the Fourth Circuit first addressed the application of proportionality review to sentences less than life without possibility of parole, the court held, "*Extensive* proportionality analysis is required only in those cases involving life sentences without parole." *Rhodes*, 779 F.2d 1019 (emphasis added).   The use of the adjective "extensive" indicates that the Fourth Circuit initially intended somewhat less thorough review to be available for sentences less than life without possibility of parole, which would be consistent with the Supreme Court's holding that "no penalty is *per se* constitutional."

Thus, the Court notes the possibility that a blanket denial of Eighth Amendment proportionality review of sentences less than life without possibility of parole may be inconsistent with Supreme Court precedent.   Nevertheless, the Court need not make such a determination because *Rhodes* provides an alternative option to the Court.   In *Rhodes*, the defendants who were forty-two years old and thirty-eight years old received sentences of fifty and seventy-five years without parole, respectively.   *Rhodes*, 779 F.2d at 1026.   The *Rhodes* defendants argued that based

on their sentences and ages, they would likely die in prison, and therefore, were entitled to proportionality review. *Id.* The Fourth Circuit recognized this argument, and though it held that proportionality review is only available where a defendant is sentenced to life imprisonment without parole, it provided an alternative ground for its decision by engaging in the proportionality analysis set forth in *Solem. Id.* at 1028–29. Even though *Solem* involved a defendant who had been sentenced to life without the possibility of parole, the Court nevertheless analyzed the sentence using de facto proportionality review. The Fourth Circuit in *Rhodes* conducted the analysis[14] bearing in mind the following quotation from *Solem*: "Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Rhodes*, 779 F.2d at 1028 (quoting *Solem*, 463 U.S. at 290).

Defendant argues that, like the sentences in *Rhodes*, his sentence is a *de facto* life sentence, and as such, is subject to proportionality review. Defendant, who is in his late sixties and in poor health argues that, based on estimates by the Social Security Administration, he has a life expectancy of approximately 14 years. If sentenced to the statutory minimum for Counts One through Three, Defendant would receive a sentence of twenty-five years imprisonment. Therefore, the Court **FINDS** that Defendant's minimum sentence would be a *de facto* life sentence. Accordingly, the Court will engage in a proportionality analysis guided by *Solem*.

---

[14] The *Rhodes* court did not conduct "an extended proportionality analysis" due to the "substantial deference that should be accorded Congress and the sentencing court" and in light of the court's duty "to decide whether the sentence under review [was] within constitutional limits." *Rhodes*, 779 F.2d at 1028. However, it did review the *Solem* principles before concluding that "although [the sentences] are indeed severe, [they] are not disproportionate to the crimes committed so as to constitute cruel and unusual punishment." *Id.* at 1029.

First, the Court will examine the gravity of the offence and the harshness of the penalty. There is no doubt that any type of sexual exploitation of a minor is a very serious offense.  *See Malloy*, 568 F.3d at 180 n.14.  In this instance the sexual exploitation took the form of receiving and possessing child pornography through the use of the Internet.  Children are irreparably harmed when used to create the material that feeds a market composed of individuals who receive these images. However, Defendant's triggering offense of receiving child pornography is not the Court's only concern.  This is not Defendant's first offense involving the exploitation of a minor.  On July 23, 1987, Defendant pled guilty to "Sexual Abuse in the First Degree," in violation of W. Va. Code § 61-8B-7.  This charge stemmed from Defendant's use of physical force to coerce a six-year-old boy to engage in sexual intercourse with Defendant.  Because Defendant's recent conviction of receipt and possession of child pornography was preceded by his 1987 conviction, Defendant was also found guilty of receiving an obscene visual representation of the sexual abuse of a child while being required by federal or other law to register as a sex offender in violation of 18 U.S.C. § 2260A, which carries an additional mandatory penalty of ten years.[15]   Thus, the severity of Defendant's

---

[15]  Defendant argues that a ten year sentence under § 2260A is not appropriate for him because, unlike other offenses that trigger the application of the statute, his offense of exploitation against children does not involve a violent sex offense.  The Court finds this argument unpersuasive. Section 2260A is part of the Adam Walsh Child Protection and Safety Act of 2006 (the Act), which was designed "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."  Pub. L. No. 109-248, 120 Stat 587.  Like violent offenses included in § 2260A, downloading files of child pornography causes children to be exploited by contributing to the demand for such materials.  For this reason, Congress found it necessary to include receipt of child pornography as an offense that triggers § 2260A, and the Court does not find any reason to question that decision.

sentence is largely based on his recidivism. *See Ewing*, 538 U.S. at 25 ("Recidivism has long been recognized as a legitimate basis for increased punishment.").[16]

Secondly, the Court considers sentences imposed on other defendants in this jurisdiction. Last year, the Fourth Circuit upheld a sentence of life imprisonment imposed by another judge of this district on a defendant who was convicted of one count of conspiracy to distribute fifty grams or more of cocaine base, cocaine, and heroin, and two counts of managing a residence for purpose of storing cocaine base. *See United States v. Wilson*, No. 08-4397, 2009 WL 693512, at **2 (4th Cir. Mar. 18, 2009). The Fourth Circuit has also affirmed a life sentence in this district on a defendant who was convicted of kidnapping and interstate domestic violence. *See United States v. Bailey*, 112 F.3d 758, 773 (4th Cir. 1997).[17] In addition, the Fourth Circuit has held that a mandatory minimum sentence of 25 years for defendant's second conviction for using and carrying a firearm during and in relation to a crime of violence was neither excessive nor disproportionate. *United States v. Richardson*, 263 F. App'x 388 (4th Cir. 2008).

---

[16] Defendant argues that his penalty is excessively harsh because his "prior 1987 conviction has been twice relied upon for enhancement purposes." (Docket 144 at 7.) This assertion is based on the fact that in addition to triggering § 2260A, Defendant's prior conviction increases the statutory range for Count One to 15–40 years rather than 5–15 years. However, the Court gives little weight to this argument because Congress clearly intended that recidivist offenders be subjected to these increased penalties, and the Court finds no reason to ignore the judgment of Congress at this point. *See also United States v. MacEwan*, 445 F.3d 237 at 248 (3d Cir. 2006) (The Court upheld the use of increased punishment where the defendant previously committed the crime of receiving child pornography; the repeat offender 15-year mandatory minimum sentence did not violate the proportionality principle of the Eighth Amendment.).

[17] In *Bailey*, the Honorable Charles H. Haden, II, Chief Judge, listed several reasons for his decision to depart upward from the Sentencing Guidelines, including serious injuries suffered by the victim. *Bailey*, 112 F.3d at 770–71.

With respect to the final *Solem* element, the Court is unable to find another case in any jurisdiction discussing the application of the penalty found in § 2260A.  However, the Fifth Circuit recently affirmed a mandatory ten year sentence for a violation of 18 U.S.C. § 2260A.  *United States v. Brantman*, 341 F. App'x 38 (5th Cir. Aug. 7, 2009).  The defendant in *Brantman* was sentenced to 168 months of imprisonment for traveling in interstate commerce to engage in illicit sexual conduct with a minor in violation of 18 U.S.C. § 2423(b).  *Id.* at 38.  Because the defendant had been required to register as a sex offender under New York law, the § 2423(b) offense triggered the application of § 2260A, and he was sentenced to an additional 120 months of imprisonment.[18]  The Court also notes that a defendant in at least one other jurisdiction was recently sentenced to a life term of imprisonment for similar conduct.  *See United States v. Rosenbhom*, 564 F.3d 820 (7th Cir. 2009) (affirming mandatory life sentence of a defendant who had two prior sex-related offenses and plead guilty to exploiting children and producing sexually explicit images of minors in violation of 18 U.S.C. §§ 2251(a), 2260A, and 3559(e)(1)).[19]  In addition, there are Courts of Appeal cases where

---

[18] In *Brantman*, the court did not review the application of § 2260A, which was not contested.  The defendant generally appealed his sentence because he believed it was "unreasonable because the Sentencing Commission failed to meet the purposes and sentencing objectives of 28 U.S.C. § 991(b)(1)(C) and 18 U.S.C. § 3553(a)(2) when it promulgated U.S.S.G. § 4B1.5 and § 2A3.6."  *Id.* at 39.

[19]  Again in *Rosenbohm*, the court did not review the application of § 2260A because it was not contested.  Instead it reviewed the application of § 3559(e)(1), which imposes a mandatory life sentence upon an offender with a "prior sex conviction" against a child.  Because the Court cannot find other cases discussing the application of the penalty in § 2260A, the Court has also looked to other jurisdictions for examples of child pornography sentences where the defendant had a prior criminal history of actual sexual abuse.  *See e.g., United States v. Ray*, 323 F. App'x 694 (10th Cir. 2009) (affirming an upward sentencing departure of 60 months from the maximum 210-month recommended Guidelines sentence where defendant pled guilty to transportation of child pornography and who had extensive criminal history involving violent sexual assaults and sexual abuse of minor boys and girls); *United States v. McCaffrey*, 437 F.3d 684 (7th Cir. 2006) (upholding

(continued...)

lengthy child pornography sentences have been challenged and upheld under the Eighth Amendment.[20]

The Court has compared Defendant's conduct with that of the defendants in the above-cited cases.  In addition, the Court is guided by the principle that "the fixing of prison terms for specific crimes involves a substantial penological judgment that, as a general matter, is properly within the province of the legislature, and reviewing courts should grant substantial deference to legislative determinations."  *Harmelin*, 501 U.S. at 959.  Additionally, "instances of gross disproportionality will be hen's-teeth rare."  *United States v. Polk*, 546 F.3d 74, 76 (1st Cir. 2008) (citing *United States v. Saccoccia*, 58 F.3d 754, 788 (1st Cir. 1995).[21]  Based on these reasons, the Court concludes that,

---

[19](...continued)
a 240-month sentence for receiving and possessing child pornography where the district court granted motions for a 5-level enhancement due to the defendant's pattern of sexual abuse and a 5-level increase in defendant's criminal history category); *United States v. Crume*, 422 F.3d 728 (8th Cir. 2005) (affirming a 262-month child pornography sentence where the defendant's prior convictions related to sexual abuse of a child).

[20] *See, e.g., United States v. Falgout*, 325 F. App'x 775 (11th Cir. 2009) (960-year sentence was not disproportionate under the Eighth Amendment for the crime of 32 violations of producing child pornography); *United States v. Neston*, 304 F. App'x 821 (11th Cir. 2008) (240-month sentence for violations of 18 U.S.C. § 2252A(a)(2)(B) and (b)(1) did not violate the Eighth Amendment's prohibition against cruel and unusual punishment); *United States v. Polk*, 546 F.3d 74, 76 (1st Cir. 2008) (15-year mandatory minimum term of imprisonment under 18 U.S.C. § 2251(e) did not violate the Eighth Amendment's prohibition on cruel and unusual punishment; the Court upheld the 188-month sentence for attempting to produce child pornography) ("Stern penalties are part of the legislative armamentarium, and their deployment does not in and of itself betoken cruel and unusual punishment."); *United States v. Black*, 239 F. App'x 210 (6th Cir. 2007) (30-year sentence for various offenses related to receipt, possession, distribution, and transportation of child pornography and attempted use of a minor to produce child pornography was not cruel and unusual nor disproportionate to the crimes); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (140-year sentence for producing and distributing child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e), 2252A(a)(1), and 2252A(b)(1) did not violate the Eighth Amendment).

[21] The *Polk* court further elaborated: "When Congress has identified a particular scourge and, using reasoned judgment, articulated a response, courts must step softly and cede a wide berth to the
(continued...)

although Defendant's sentence ultimately may be severe, it would not be disproportionate to the crimes he committed and does not amount to cruel and unusual punishment in violation of the Eighth Amendment.   Accordingly, Defendant's request that the Court  find that the application of a consecutive ten year term of imprisonment would violate his Eighth Amendment rights is **DENIED**.

### C. Factual Objections to Presentence Report

Defendant objects to the inclusion of eighteen paragraphs that contain evidence not presented at trial.  Defendant maintains that these provisions of the report contain unnecessary details that could adversely affect him while he is in prison.  In particular, Defendant argues that the inclusion of these paragraphs could subject him to the scorn of the Bureau of Prisons (BOP) and physical abuse from inmates.

Rule 32 of the Federal Rules of Criminal Procedure provides that the PSR must include, among other things, "any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment."  Fed. R. Crim. P. 32(2)(A)(iii).  "This information is to be included even if it would otherwise be inadmissible at trial."  *See United States v. Corbitt*, 879 F.2d 224, 230 (7th Cir. 1989) ("[T]he presentence investigation often involve[s] a broad-ranging inquiry into a defendant's private life, not limited by traditional rules of evidence."); *see also United States v. Sklar*, 920 F.2d 107, 110 (1st Cir. 1990) (at sentencing, a court may consider "virtually any dependable information" that is connected to the charged crime).

The Court has examined each portion of the PSR to which Defendant takes issue and concludes that each is properly included.  The information included in the PSR provides the Court

---

[21](...continued)
Legislative Branch's authority to match the type of punishment with the type of crime."  *Polk*, 546 F.3d at 76 (citing *Solem*, 463 U.S. at 290).

with the appropriate background not only to determine the applicability of sentencing enhancements but also to impose an appropriate sentence in general. In addition, the inclusion of the contested information is necessary for the BOP to provide the defendant with appropriate treatment during his term of imprisonment.

Moreover, the Court finds Defendant's argument that the inclusion of this information would subject Defendant to unnecessary harm to be unpersuasive. Rule 32 requires that "any other information that, if disclosed, might result in physical or other harm to the defendant or others" be excluded. Fed. R. Crim. P. 32(3)(C). However, the Court has no reason to believe that the inclusion of the contested information might result in harm to Defendant. No evidence supports Defendant's argument that inmates are privy to information provided in the PSR. To the contrary, this Court's local rules mandate that the PSR remain sealed (L.P. Crim. P. 32.2(a)). The PSR could not be publicly disclosed without an order of this Court. *Id.* Additionally, the BOP Correctional Systems Manual requires that "[a]ll material relating to the original sentence computation . . . will be maintained in a [Judgment and Commitment (J&C)] file." U.S. Department of Justice Federal Bureau of Prisons Correctional Systems Manual (2009), http://www.bop.gov/policy/progstat/5800_015.pdf. The J&C files are stored in locked cabinets in a secured room. *Id.* Additionally, inmates can only review their PSR; they "cannot obtain or possess photocopies." Bureau of Prisons Program Statement No. 1351.05 (Sept. 19, 2002). "Inmates violating this provision are subject to disciplinary action." *Id.* Therefore, other inmates should not have access to Defendant's PSR much less cause him harm based on the disputed

provisions contained therein.  Accordingly, Defendant's objection to the inclusion of paragraphs 22, 23, 27–30, 34–36, 45, 49, 50, 53, 57, and 89 in the PSR is **OVERRULED**.[22]

### III.  CONCLUSION

Based on the above-stated reasons, Defendant's objections to the PSR are **OVERRULED**, and his motion for a variance presented in his sentencing memorandum is **DENIED IN PART**.  It is **ORDERED** that Defendant's sentencing hearing is hereby **SCHEDULED** for **June 16, 2010, at 9:30 a.m.** at the Robert C. Byrd United States Courthouse, 300 Virginia Street East, Room 6610, Charleston, West Virginia.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:       June 2, 2010

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[22]  To the extent that Defendant objects to the inclusion of paragraphs 31, 32, and 40, his objection is also **OVERRULED**.